Mary E. McClain, Appellant, v. Lucinda Capper, et al.

| | |
|---|---|
| 98 | 145 |
| 99 | 623 |
| 98 | 145 |
| 106 | 696 |
| 98 | 145 |
| 118 | 410 |
| 118 | 413 |
| c118 | 414 |
| 98 | 145 |
| h130 | 614 |
| 98 | 145 |
| 133 | 89 |
| d133 | 347 |
| 133 | 349 |
| 98 | 145 |
| c134 | 52 |
| 98 | 145 |
| 136 | 409 |

**Appeal:** JURISDICTION. Where at the close of plaintiff's evidence, defendant's motion for judgment was regularly made and determined, the appellate court has jurisdiction to consider the merits of the controversy.

**Practice:** ADJUDICATION BY DEMURRER. Code, section 2650, as amended by Acts Twenty-fifth General Assembly, chapter 96, provides that when a "demurrer shall be overruled, and the party demurring shall answer or reply * * * the sufficiency of the pleadings thus attacked shall be determined as if no demurrer had been filed. No pleading shall be held sufficient on account of a failure to demur thereto." *Held*, that the overruling of a demurrer to a petition by one judge did not preclude another from holding the petition sufficient, by granting defendant's motion for judgment at the close of plaintiff's evidence.

**Will:** CONSTRUCTION. Under a clause in a will reciting, "When my youngest child arrives at full age, I desire that the real estate be equally divided between my children, their heirs, or survivors of them," said children took no vested interest in the land until the youngest child attained majority, and therefore a devise of her interest therein by one who died before that time, passed no title thereto.

*Appeal from Mahaska District Court.*— Hon. A. R. Dewey, Judge.

Wednesday, May 13, 1896.

Action for the partition of real estate. The ascertainment of the respective interests involves the construction of a will. John Capper died testate in Mahaska county, Iowa, in 1867, and his will was in November of that year admitted to probate. The following are three paragraphs of his will: *"First.* I will and declare that, as soon after my death as practicable, my just debts and funeral expenses be paid, and that a certain tract of land, containing four (4) acres, described in a deed from John S. Henry to John Capper, dated June 16th, 1853, and recorded on pages 10 and 11, vol. E, of the Records of Mahaska County, Iowa, be sold. *Second.* I will and bequeath to my beloved wife, during the minority of my children, the entire use and benefit of my real estate, for the purpose of supporting and educating my children; and, when my youngest child arrives at full age, I desire that the real estate (after my wife's dower interest is set off to her herein) be equally divided between my children, viz. Margaret Jane, Rose Ann, Oscar S., Flora E., Harvey M., and John K., their heirs, or survivors of them. *Third.* I will and bequeath to my daughter Mary Elizabeth, who resides in the state of Indiana,— she having been raised by her grandfather,—the sum of twenty-five dollars, to be paid to her by my executor on final settlement of my estate; and, if there is not a sufficient personal estate to pay said legacy, the same to be paid out of my real estate." Mary Elizabeth, mentioned in the third paragraph, is the plaintiff, and daughter of the testator by a former wife, as was also Margaret Jane, mentioned in the second paragraph. Lucinda Capper is the surviving widow of the testator. The other defendants are the children of the testator and Lucinda Capper. It will be observed that the will gives to the plaintiff twenty-five dollars. but no interest in the real estate.

Margaret Jane, who is one of the devisees of the real estate, died testate in 1869; giving, by her will all her property to the plaintiff. The youngest child of the testator is of full age, and the real estate, under the provisions of the will, is for distribution. Plaintiff brings this action for partition, claiming an interest of one-seventh of two-thirds because of the devise to her from Margaret Jane Capper. In her petition she recites the facts as to the interest of each, on the basis of her interest as above stated, and she asks a confirmation thereof, and for partition accordingly. To the petition the defendants filed a general demurrer, which the court overruled. Thereupon the defendants answered, and to the answers there was a reply. Upon the issues presented the cause proceeded to trial. At the close of plaintiff's evidence, the defendants moved for judgment in their favor, on the ground that the undisputed evidence showed that the plaintiff had no interest in the land, whatever, which motion the court sustained, and from the judgment the plaintiff appealed.—*Affirmed.*

*W. W. Haskell* and *Liston McMillen* for appellant.

*L. C. Blanchard* for appellees.

Granger, J.—I. The ruling on the demurrer, by which the petition was held insufficient, was made by Judge Ryan, in December, 1894. The trial in which the judgment for defendants was entered, on motion, was had in February, 1895, before Judge Dewey. The evidence in the case was merely to prove the facts in the petition, and there seems to be a practical concession that the ruling on the motion for judgment was based on the conclusion that the petition did not show plaintiff to have any interest

in the land, because of the provisions of the will in favor of Margaret Jane Capper.

II. It is said that this court is without jurisdiction to consider the merits of this case, because the ordinary forms of procedure were not observed in the court below. Appellant states, as facts, that after the plaintiff closed her evidence, and before the defendants introduced any evidence, or the cause was argued, or argument was waived, or the cause was submitted, the court decided that the plaintiff had no interest in the land, and by such an announcement invited the defendants to move for judgment, which was done. The record does not sustain the claim as to the facts. It shows, as we have stated, that, after the evidence for the plaintiff closed, the defendants moved for judgment in their favor, which motion the court sustained. The motion seems to have been regularly made and determined. There is nothing in such a procedure to divest this court of jurisdiction to determine the merits of the controversy.

III. It is next insisted, that the ruling by Judge Ryan, as to the sufficiency of the petition, was conclusive, "for the reason that, under our system of practice, there is no way to question the sufficiency of a petition except by demurrer. And when that method of testing a petition is abandoned by filing an answer, the petition must be conclusively presumed to be good, for there is no way left to ascertain to the contrary." This must mean that the ruling on the demurrer is a conclusive adjudication of the question presented by it. A difficulty with the proposition is, Acts Twenty-fifth General Assembly, Chapter 96. It amends section 2650 of the Code, as follows:

"A demurrer shall be considered as an admission of the allegations of the pleading demurred to for the purposes of demurrer, and for such purposes only; and when the demurrer shall be overruled, and the

party demurring shall answer, or reply, the ruling on the demurrer shall not be considered as an adjudication of any question raised by the demurrer; and in such case the sufficiency of the pleading thus attacked shall be determined as if no demurrer had been filed. No pleading shall be held sufficient on account of a failure to demur thereto." The following is a part of Code, section 2650: "When any matters enumerated as grounds of demurrer, do not appear on the face of the petition, the objection may be taken by answer. *If no such objection is taken it shall be deemed waived.*" The act in question strikes out the words we have italicized. We need not attempt to define the change in the practice by the act. It is sufficient to say that it negatives the proposition contended for by appellant. It is expressly said in the first section that such a pleading "shall be determined as if no demurrer had been filed." Before the act, we would have said the petition must be held sufficient for a failure to demur. But the last cause of the section provides, "No pleading shall be held sufficient on account of a failure to demur thereto." The language of the act is not addressed to this court, but it seems as applicable to one court as another. In view of the statute, if not for other reasons, we think the ruling on the demurrer did not conclude the court from afterwards determining the sufficiency of the petition at the close of plaintiff's evidence. The argument deals with the question of comity or courtesy, as between the judges sitting at different terms. While different judges may preside, the court is the same, and the ruling is that of the court, as distinct from personality. We are without doubt that a judge presiding may as legally and as appropriately change a ruling previously made by another judge on a pending proposition as if made by himself. We do not share in the

thought that such an act, in and of itself, involves a breach of judicial courtesy.

IV.   The next proposition involves the merits of the controversy, and is as to the sufficiency of the petition. It resolves itself to a construction of the will of John Capper, in his devise to Margaret Jane. It may be conceded that if she took, by the devise, a vested interest in the land during her life, it passed, by her devise, to the plaintiff. It will not be doubted but that, if Margaret Jane had lived till the youngest child of John Capper had attained his majority, the devise to her would have been perfect. We are then to deal with the legal effect of her decease before that time. In other words, did she, at her father's death, take a vested, or a contingent, interest in the land. It may be well to first notice a few legal rules applicable to such devises. In 2 Williams, Ex'rs. 514, it is said, under the subject of "Legacies Lapsed by the Death of the Legatee after the Death of the Testator": "If a legacy be given generally, without specifying the time when it is to be paid, it is due on the day of the death of the testator.   *   *   *   But, when a future time for the payment of a legacy is defined by the will, the legacy will be vested or contingent according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy, or to the gift of it. In ascertaining the intention of the testator in this respect, the courts of equity have established two positive rules of construction: (1) That a bequest to a person, *payable* or *to be paid* at or when he shall attain twenty-one years of age, or at the end of any other certain, determined term, confers on him a vested interest immediately on the testator's death.   *   *   *   (2) That if the words 'payable,' or 'to be paid,' are omitted, and the legacies are given *at* twenty-one,   *   *   *   or any other future,

definite period, these expressions annex the time tc the substance of the legacy, and make the legatee's right to depend on his being alive at the time fixed for the payment. Consequently, if the legatee happens to die before that period arrives, his personal representatives will not be entitled to the legacy." Mr. Hawkins, in his treatise on Wills (page 232), says: "Although the period appointed for actual payment does not in general, influence the vesting, it has this effect in the following case: *Leeming v. Sherratt*, 2 Hare, 14. A bequest to the children of A, when the youngest child attains the age of twenty-one years, is to the exclusion, *prima facie*, of those dying under twenty-one." The author quotes from the cited case as follows: 'The testator having postponed the division of the residue until his youngest child shall attain that age, I think no child who did not attain that age, could have been intended to take a share therein." On page 234, the author further says: "There is a material distinction, as regards vesting, between legacies payable at a future time out of real estate, and legacies payable at a future time out of personality. As regards the latter, the time does not, in general, affect the vesting; but, as regards the former, the rule is that legacies charged on land do not vest before the time appointed, unless an intention appears to the contrary." In *McCartney v. Osburn*, 118 Ill. 403 (9 N. E. Rep. 210), the above rules are followed, and the case quotes and applies the following from Jarman on Wills: "When the only gift is in the direction to pay or distribute at a future age, the case is not to be ranked with those in which the payment or distribution only is deferred, but it is one in which time is of the essence of the gift."

We have seen no case contravening these rules, and we may now look to their application to the case at bar. We first apply the rule quoted from Jarman on Wills, as

to where the gift is in the direction to distribute or pay only. That is precisely the character of the devise of the land in question. As to his personal estate, he at all times says: "I will and declare," or "I will and bequeath," using express words of gift or grant, as "I will and bequeath to my beloved wife.   *   *   *   I will and bequeath to my daughter Mary Elizabeth." As to the real estate in question, he says: "When my youngest child arrives at full age, I desire that my real estate   *   *   *   be equally divided between my children [naming them], their heirs, or survivors of them." A rule of construction could not be more applicable. There are no words of gift or grant, except the direction for a division, which of course, means that when the time arrives the interest shall vest in the proportions indicated. That is likely the division intended, and not necessarily a partition or setting apart. These rules of construction are intended to reflect the intent of the testator, which is, in all cases, to govern, and such is our aim in their application. Our conclusion is much aided by the language of the will making the devise, in this: that the division is to be made between the children named, their heirs, or *survivors of them;* indicating that the property was to vest in Margaret, if she survived, and if not, in her heirs, or their survivors, as they might be living to receive it. It seem to us that under the rules cited the time fixed for the division is annexed to the gift or devise, and not to the payment; so that the interest of Margaret Jane did not vest during her life, and hence she had no property in the land that she could devise. Some authorities are cited by appellant, but they do not show a different rule from what we have stated. Most of them are from Jarman on Wills, from which work we take the rule we announce, supported by other authorities. Beach, Wills, section 170, supports the rule. It is there said,

"A legacy is to be construed as vested or contingent according to whether the contingency relates to the gift itself, or to the payment thereof." Reliance is placed on language used in *Hadley v. Stuart*, 62 Iowa, 267 (17 N. W. Rep. 500). In that case a will gave to the widow the use of the land until the testator's son, Thomas, arrived at full age, when the land was to be sold, and the proceeds divided equally between his heirs. The land was in Indiana, and the widow sold it without authority, and bought land in Iowa, which was the subject of the contention. In considering the authority of the widow to sell the Indiana land, some language is used, as that, subject to the use of the widow, the farm passed to the heirs. Accurately speaking; there was no devise in that case of the farm to the heirs, but only a bequest of the proceeds; and the language, used argumentatively, does not distinguish as to the facts, because the conclusion is the same as to the widow's authority, with one interest in the heirs, as the other. The case is entirely unlike this, and no such a question is considered in it. With these conclusions, the judgment of the district court must stand AFFIRMED.