LUCINDA BAKER, et al., v. HANNAH HIBBS, Appellee, SARAH E. HIBBS, Appellant, J. L. HIBBS, et al., Appellees.

Wills: CONSTRUCTION: CONTINGENT REMAINDERS. Where the devise of a remainder is made to a class, to be distributed upon the termination of a life estate, only those members of the class who are living at the time of distribution take the remainder; and as a general rule the devise of a remainder to the living heirs of one already deceased creates a contingent and not a vested estate. So that where the testator devised his real property to his wife for life, to be sold upon

her death and distributed among certain children and the ''living heirs of the body'' of a deceased son, the remainder to the grand-children was contingent; and where they died during the continuance of the life estate the bequest failed, and the share that would have gone to them if living did not pass to their heirs.

*Appeal from Wayne District Court.*—HON. H. K. EVANS, Judge.

THURSDAY, OCTOBER 22, 1914.

SUIT for the partition of certain real estate. Sarah E. Hibbs, a defendant and appellant, claimed an one-fourteenth interest in the lands against some of the other parties plaintiff and defendant. The trial court found that Sarah E. Hibbs had no interest or share in the lands, and she appeals.—*Affirmed.*

*Miles & Steele,* for appellant.

*Carter & Bracewell,* for appellees.

DEEMER, J.—The issue is between Sarah E. Hibbs, a defendant on the one side, and Lucinda J. Baker (now Chapen), Martha E. Marsh, and Mary K. Gunter, plaintiffs, and Hannah Hibbs, Nora D. Lee, James Hibbs, Stephen A. Hibbs, Lloyd Hibbs, and Carl Hibbs, defendants, on the other. Sarah E. Hibbs claimed an undivided one-fourteenth interest in the lands under the will of S. A. Hibbs, deceased, which, so far as material, reads as follows:

I give and bequeath to Eliza Hibbs, my beloved wife, all my personal property, she to sell enough to pay all my debts out of said property, including my last sickness and burial expenses, her to have the personalty all in her own right, to do as she pleases with after all the debts are paid, to be in lieu of dower, also to have the use and full control of all the real estate during her natural life to control and use the same as I might if living. At the death of my wife, Eliza Hibbs, my

farm is to be sold by my executor, in two parcels, the one hundred and twenty acres deeded to me by John Chilcoat in one parcel, and the other two hundred acres deeded to me by Jacob Chilcoat in another parcel, it being divided this way on account of the improvements on the same; the proceeds of the said land is to be divided as follows: Equally between the following named heirs to share and share alike: Lucinda J. Baker, Martha E. Marsh, P. J. Hibbs, Mary K. Gunter, Hannah Hibbs, children by former wife, also the living heirs of the body of the late P. W. Hibbs, also a son by former marriage; also J. L. Hibbs, Sarah B. Anderson, Emma V. Keller, Clarissa M. Darrah, Charles O. Hibbs, Samuel A. Hibbs, children by present wife; also Izateus Glover, stepson, being son of my present wife by former husband. Golda Evans, the daughter of Cora Evans, deceased, all of the above named parties to share and share alike upon the following conditions: having already advanced the said Lucinda Jane Baker, the sum of three hundred dollars by deeding to her forty acres of land, I desire that amount deducted from her share, one hundred dollars of the remainder of her share is to be paid to her, and the remaining is to be placed at interest and given to her as needed by guardian appointed for her by the court. Hannah Hibbs is to have one hundred dollars at the time the division is made, and the balance to be put on interest to be used for her support. Charles O. Hibbs to be appointed as her guardian. Golda Evans, daughter of Cora Evans, deceased, share is to be placed at interest to be used only for her support and if she should die before she comes of age without leaving heirs of her body, her share is to go to her mother's full brothers and sisters, them to share and share alike; and further if there should be anything left of the estate of Lucinda Jane Baker's share it shall go to her full brothers and sisters, if any of the heirs named should die without living issue then and in that case their share or shares shall go to their brothers and sisters of the full blood. If any of the above named heirs should make any disturbance or try to break this will, then and in that case the heir so making the fuss or disturbance shall be cut off and have no part in the share of my estate except the sum of ten dollars, which shall be his full share.

Testator died seised of the real estate in controversy March 11, 1902. His will was executed September 26, 1901,

and it was duly admitted to probate on May 14, 1902. He left surviving his widow, Eliza Hibbs, and the following children: Lucinda Jane Baker-Chapen, Martha E. Marsh, Mary K. Gunter, P. J. Hibbs, and Hannah Hibbs, who were children by a former wife, and J. L. Hibbs, Emma V. Keller, Clarissa M. Darrah, Sarah B. Anderson, Charles O. Hibbs, and Samuel A. Hibbs, children by the said Eliza Hibbs. He also left surviving him the following grandchildren: Okley Hibbs and Golda Evans, and one stepson, Izateus Glover, a son of his wife, Eliza Hibbs, by a former husband. At the execution of the will, the testator's son by his former wife, P. W. Hibbs, was dead, and there then survived said P. W. Hibbs, his widow, Sarah E. Hibbs, and two children, to wit, Okley Hibbs and Merna Hibbs, who were his only heirs at law, all of whom were living at the execution of the will. The widow, Sarah E. Hibbs, subsequently married J. L. Hibbs, previously mentioned herein, and is now the wife of said J. L. Hibbs, and the mother of the two above-mentioned children of said P. W. Hibbs, deceased. Merna Hibbs died intestate prior to the death of said testator, to wit, on December 4, 1901, aged fifteen years, never having married, and never having had issue. Okley Hibbs died intestate May 25, 1909, aged twenty-six years, eight months, and fourteen days, never having married and never having had issue, leaving surviving as his sole heir at law, the said Sarah E. Hibbs, his mother, defendant herein. P. J. Hibbs died in August, 1905, leaving surviving him Nora D. Hibbs, his widow, and the following children, as his only heirs at law, to wit: James Hibbs, Stephen A. Hibbs, Lloyd Hibbs, and Carl Hibbs, all of whom are now living. Nora D. Hibbs, hitherto mentioned, subsequently intermarried with one ―――― Lee, and is now his wife. Emma V. Keller died in April, 1905, leaving her surviving, her husband, Isaac Keller, and the following children as her only heirs at law, to wit: Harness Keller, Mama Keller, Oris Keller, and Lee Keller, all of whom are now living. The granddaughter, Golda Evans, and the stepson, Izateus Glover, are still living. Eliza Hibbs,

widow of testator, died January 31, 1912, and the real estate in controversy was still intact and unsold at her death.

The real question in the case is one of law, and it is this: Did Okley Hibbs and Merna Hibbs, grandchildren of the testator, take a vested estate under the will before quoted, or was it a contingent one, dependent upon their surviving the widow, Eliza Hibbs? They are not mentioned in the will by name, and if they took any estate it is because of their being "the heirs of the body of P. W. Hibbs, deceased." P. W. Hibbs was dead at the time of the execution of the will, but his heirs were mentioned simply as a class, although they were then well known to the testator by name. In other words, the devise was to a class, and the will provides that at the death of testator's wife, the farm was to be sold and the proceeds were to be divided as therein stated, and in part to the living heirs of the body of P. W. Hibbs, deceased, a son by a former marriage.

It is contended for appellant that by the terms of the will the children of P. W. Hibbs, living at the time of testator's death, took the share devised to them as a vested remainder, and that upon their death, unmarried and without issue, their shares went to their mother, Sarah E. Hibbs. In support of this claim reliance is placed upon some well-established rules, to wit: That a will speaks from the time of testator's death; that a remainder will be construed to be a vested rather than a contingent one, if this may be done without doing violence to the terms of the will; that if a beneficiary be living at the time of testator's death, the devise takes effect although the time of its enjoyment is postponed until a future period. All these propositions may be conceded; but most of them are mere presumptions, which may be met by evidence to the contrary. For instance while it is true as a general rule that a will is ambulatory in character, and speaks only from testator's death, nevertheless the testator may make it speak as of some other period, and as a rule control the disposition of his property as he wills. He may, if he sees fit, make it

speak as of some other date, and if he does so, courts must construe the instrument according to his intent.

This is peculiarly true where, as in this case, the gift was to a class living at a particular time. And it is a general rule that where there is a devise of a life estate with a remainder to a class, those members of the class, and those only, take, who are in existence at the time fixed for distribution. And if none of them are in existence, the gift fails. *Olsen v. Youngerman*, 136 Iowa, 404; *Wilhelm v. Calder*, 102 Iowa, 342; *Kalbach v. Clark*, 133 Iowa, 215; *McClain v. Capper*, 98 Iowa, 145.

Again, the general rule is that a gift of a remainder to the living heirs of one already deceased creates a contingent and not a vested estate. *Birdsall v. Birdsall*, 157 Iowa, 363; *Twaites v. Waller*, 133 Iowa, 84. As supporting the rule of this court, see *Olney v. Hull*, 21 Pick. (Mass.) 311; *Golladay v. Knock*, 235 Ill. 412 (85 N. E. 649, 126 Am. St. Rep. 224); *Barr v. Denny*, 79 Ohio, 358 (87 N. E. 267); *In re Moran's Will*, 118 Wis. 177 (96 N. W. 367).

Without reference to any particular rules, it is quite apparent from the reading of the will that testator did not intend to pass a vested estate to the heirs of P. W. Hibbs, then deceased. He expressly provided that his real estate be sold only after the termination of the life estate to the widow, and that the proceeds and not the land itself be divided among the parties named, and *"the living heirs* of the body of the late P. W. Hibbs." Manifestly by the use of these terms he meant the heirs of P. W. Hibbs living at the time of the death of his widow, Eliza Hibbs. The intention of the testator, when ascertained, must be given effect, unless there be some arbitrary rule of law to the contrary. There is no such rule applicable here. On the contrary, the cases we have cited clearly indicate that under all canons of construction the estate created by the will was what is known as a contingent remainder, and as the beneficiaries died before the death of the widow, childless and unmarried, they took nothing, and

nothing passed to their mother, Sarah E. Hibbs. None of the cases relied upon by appellant announces a contrary rule, unless it be *Archer v. Jacobs,* 125 Iowa, 467, but that case was distinguished in *Birdsall v. Birdsall, supra.*

*Blain v. Dean,* 160 Iowa, 708, also relied upon by appellant, is not in point, and contains nothing at variance with the rules here announced. No question is made that the gifts are of real estate; hence we do not consider the doctrine of equitable conversion into personalty, and this decision is not to be taken as an authority one way or the other on that proposition. This doctrine would not afford any comfort to appellant in any event.

The decree is right, and it is—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.